Mr. Justice NELSON
delivered the opinion of the court:
The case turns mainly upon the question whether the $3000 mentioned in the lease, accruing on the happening of this event, is rent or a penalty.
The argument on behalf of the tenant is, that by the true construction of the lease, the landlord, on the happening of the event, may at his option consider the term as ended, and re-enter, and in addition distrain for the $3000, and hence the term hating ended, or it being in the power of the landlord to end it, the sum reserved cannot be regarded as rent, but as a penalty, as the relation of landlord and tenant has ceased.
"We do not agree to this construction. Although the wording of the clause occasions some obscurity and hesitation, yet, regarding the sense and substance of it, there can be little doubt about its meaning. It will be observed, that if the tenant assigns or underlets, the term ceases at the option of the landlord. Bo in the event of the removal or attempt to remove the goods. Now the words, “ at the sole option *65 and election” of the landlord, are superfluous, if intended to be limited to this breach of the- covenant. All that was necessary was the inhibition to assign, underlet, or remove the goods, and the right of re-entry in case of breach. Without giving the option or election, the landlord had the right to waive the forfeiture. Receiving rent with knowledge of the breach is a waiver. So, levying a distress for the rent, or in any other way consenting to a continuance of the term. These words, we are of opinion, are entitled to an influence in the construction of this part of the lease beyond these .covenants of forfeiture, and may aid in the construction and meaning of the clause which provides for the payment of the year’s rent in advance. And the true meaning we think is, that the landlord may at his option consider the term at an end, and re-enter in the events mentioned, or may at his. option (understood), have the year’s rent in advance.
We do not think the word “ moreover,” in the connection found, necessarily means the rent in advance, in addition to the previous remedies mentioned, but rather an alternative remedy.
These covenants are inserted in a lease for the better security of the rent. The one in question simply makes the rent payable in advance, instead of by instalments, on the happening of the event stated. It would have been not only strange but unreasonable to have made this stipulation as contended for on the part of the plaintiff, to take effect at the moment the term ceased, or might be put an end to by the landlord. The words should be very clear and controlling to lead to such an interpretation.
It is argued that the reservation of this $3000 rent in advance should be regarded as a penalty, for the reason that the event would happen on the removal of a single article of goods, and that the remedy is out of reasonable proportion to the injury. But the answer is, the covenant against removal necessarily embraced all the goods on the premises that furnished security tor the rent, and it is not for the tenant to set up as a defence to its enforcement, that the breach is not as great as it might have been. The removal of a single *66 article is a wrong which he is not permitted to take advantage of, and besides, there is no hardship in the case, for if he desired to remove any particular article, the covenant permits it on replacing goods of equal value.
The removal of the goods took place on the 18th of May, 1857, some year and five months before the expiration of the lease, so that practically the reservation of the rent in advance, on the event in the lease happening, works but simple justice to all parties. It became the substitute for the rent reserved payable monthly. If the tenant had brought about the event by the removal of the goods within a year of the termination of the lease, whether or not he might have had a remedy to abate the excess, we need not discuss.
Judgment reversed, and cause remanded for a venire de novo.